SCHNEIDER and others *vs.* McFARLAND and others.

The filing of an inventory of the personal estate of an intestate, by the administrator, is not essential in order to give the surrogate jurisdiction under the act of April 8, 1813, relative to the court of probates, &c. to order the sale of the real estate, upon the application of the administrator.

It is the duty of an administrator to make and file an inventory; and the surrogate, it seems, should refuse to order the sale of the real estate, or to institute any proceedings for that purpose until the administrator has done it. But the omission does not affect the surrogate's jurisdiction to direct a sale; and therefore his acts cannot be attacked on that ground, in a collateral proceeding.

Upon such an application by an administrator it is necessary that an account of the personal estate, and of the debts, of the intestate should be presented by the administrator. And until such an account is presented, the surrogate has no power to take the first step towards the sale of the real estate. It is the foundation of all the subsequent proceedings.

If, upon such an application, no guardians are appointed for the infant heirs of the intestate, their rights in the real estate will not be affected by an order or decree of the surrogate directing the sale of such real estate.

EJECTMENT for an undivided half of certain premises in the town of Springport in the county of Cayuga. On the trial before WHITING, Cir. J. at the Cayuga circuit in March, 1847, the plaintiffs gave in evidence—1st. A warranty deed dated Nov. 14, 1812, from Cornelius Stout to John Adam Schneider

and Adam Partenheimer, for the consideration, as expressed therein, of $3750, conveying to the grantees, their heirs and assigns, the premises of which the plaintiffs claim the undivided moiety as the same are described in the declaration. 2d. A warranty deed dated Nov. 24, 1829, from John Partenheimer and wife to George McFarland, for the consideration, as expressed, of $2507, conveying to the grantee, his heirs and assigns the premises conveyed by the last mentioned deed, and by the same description excepting ten acres ·out of the southwest corner thereof. 3d. That the said John Adam Schneider died in 1818, in Milton, in the county of Northumberland, in the state of Pennsylvania, leaving him surviving four children, one of whom, Mary Margaret, had died since the death of her father, intestate and without issue, and the other three of whom, John, Joseph, and Hannah E., were the plaintiffs in this suit. That the said Schneider left a will, which was admitted to probate in Pennsylvania, but no proof was offered that the same was admitted to probate in New-York. That the plaintiffs at the time of the death of their father, were of the following ages, viz. John about seven years, Joseph about five years, and Hannah E. about one year. The plaintiffs also gave evidence, for the purpose of showing the defendants in possession of the premises in question at the commencement of the suit, and that possession thereof had been demanded by the plaintiffs and refused by the defendants. Here the plaintiffs rested their proofs.

The defendants gave in evidence the following documents, being records in the office of the surrogate in the county of Cayuga. 1. Letters of administration granted by Benjamin L. Cuyler, surrogate of the county of Cayuga, upon the estate of the said John Adam Schneider, dated August 4, 1824, to Adam Partenheimer. 2. Administration bond of same date, in the penalty of $150, executed by Adam Partenheimer, George McFarland, and William H. Seward. 3. An order of the same surrogate, of the same date, reciting that Adam Partenheimer, administrator, &c. of John Adam Schneider, had by his petition, &c. set forth that the intestate was seised, at the time of his death, of real estate within this state ; that the petitioner had

made a just and true account of the personal estate and debts of the intestate as far as he had been able to discover the same, which account was presented with the petition, and that thereby it appeared that the personal estate of the intestate was insufficient for the payment of his debts ; and ordering all persons interested, &c. to appear, &c. on the 24th of September next thereafter, &c. to show cause why a sale of the real estate should not take place, &c. 4. An order of sale made by the same surrogate, dated September 24, 1824, reciting the petition and order to show cause, and that said order had been duly published four weeks, &c. and that the administrator duly appeared, &c. and adjudging, upon due proof and examination, that the personal estate of the deceased was insufficient for the payment of his debts, and that the administrator had applied such parts of the personal estate as had come to his knowledge towards the payment of the debts, and that there yet remained due and unpaid about $2214, &c. and ordering a sale of the premises in question, &c. and that the moneys arising therefrom be applied towards the payment of the debts, &c. ; providing that before any deed should be given the administrator should make report of his proceedings to the surrogate, &c. 5. An order of the same surrogate, dated January 10, 1825, reciting the last mentioned order; that the administrator had that day made the report directed in the said last order, from which it appeared he had sold the premises upon due notice, &c. at public vendue, to George McFarland, for $1200, &c. That he had examined the said proceedings, and it appearing to him that the said sale had been legally made, and all the proceedings fairly conducted, confirmed the sale, and ordered a conveyance by the administrator to the purchaser, for the premises. 6. Notice of sale, affidavit of publication thereof, affidavit proving sale and the circumstances of the sale and report of sale, all of which appeared to be regular. Charles E. Perry, a witness for the defendants, upon whose testimony these documents were produced and received in evidence, further testified, that he was the surrogate of the county of Cayuga ; that he had made diligent search among the records and files remaining in his office

for records and other papers relating to John Adam Schneider's
estate, and in relation to his real estate, and that he could find
none of record, on file, except those here produced.   The defen-
dants also gave in evidence a deed dated Feb. 1, 1825, executed
by the said Adam Partenheimer as administrator of the said
John Adam Schneider, to George McFarland, for the premises
in question, reciting the foregoing petition, orders, and proceed-
ings before the surrogate, and conveying the said premises in
pursuance thereof.   The defendants' counsel also gave in evi-
dence a quit-claim deed for the same premises, from George
McFarland and wife to Adam Partenheimer, dated February
1, 1825.   Several witnesses were examined on behalf of the
defendants.   So much of their testimony as affects the questions
now decided is stated in the opinion which follows.

  The circuit judge charged the jury that the several matters
given in evidence on the part of the defendants were not suffi-
cient to bar the plaintiffs of their action, and that if they be-
lieved from the evidence that the defendants were in possession
of the premises in question at the time of the commencement
of the suit, then the plaintiffs were entitled to their verdict ; for
the reason that the defendants had not produced any evidence
to show that in the proceedings before the surrogate the provis-
ions of section 31 of the act of April 8, 1813, entitled "An act
relative to the court of probates, the office of surrogate, and the
granting of administrations," had been complied with.   The
defendants' counsel tendered a bill of exceptions, and the jury
rendered a verdict in favor of the plaintiffs.   A motion was
now made to set aside the verdict and for a new trial.

  *J. M. Blatchford & B. D. Noxon,* for the defendants.

  *B. Johnson,* for the plaintiffs.

  *By the Court,* WELLES, J.   The bill of exceptions, for all
the purposes of this suit, shows that John Adam Schneider, who
is the common source of title of both parties, died in 1818,
seised of the premises in question.   The plaintiffs are his heirs

Schneider *v.* McFarland.

at law, and as such claim to recover. The case shows that he left a will, but as that was not produced, and as we have no information of its contents, he may be regarded as having died. intestate in respect to the premises in question. The claims of both parties proceed upon that assumption. The defendants rely upon having established a title in George McFarland, through the proceedings before the surrogate and the administrator's deed ; and although it does not appear that they have connected themselves with that title, yet if made out legally, it will be equally available to them as an outstanding title.

There are several objections made to the proceedings before the surrogate to sell the real estate of the decedent, which will be considered in their order. 1. The plaintiffs' counsel contends that it was not proved to the surrogate that John A. Schneider died intestate, and that therefore letters of administration on his estate were granted without authority of law. Without considering the question whether enough is recited in the letters of administration, which are set forth at full length in the bill of exceptions, to show that the surrogate had jurisdiction in the case to grant them, and without deciding whether the facts necessary to confer jurisdiction may be now proved by their recital in the letters, I think a sufficient answer is that they appear to have been read in evidence without objection. If the plaintiffs had raised this point on the trial, the objection was susceptible of being removed by parol evidence. The silence of the plaintiffs is to be deemed a waiver of the objection, *provided it could have been made.* 2. It is contended that no inventory was ever returned to, or filed with, the surrogate before the order of sale was made. I think it is a fair inference from the bill of exceptions, that no inventory was filed. There is no proof whatever that any was filed, and there is some proof, and indeed quite satisfactory proof, that when the application for the sale was made and the proceedings with that view instituted, the inventory was not filed. But that, in my judgment, was not essential in order to give the surrogate jurisdiction to order the sale. The act (1 *R. L.* 450, § 23) provides that when the executor or administrator, &c. shall discover or suspect that

the personal estate is insufficient to pay the debts, &c. he shall "make a just and true account of the said personal estate and debts, &c. and deliver the same to the surrogate, who shall thereupon make an order to show cause," &c. The account required in the section just cited is entirely irrespective of the inventory required by the 10th section. It is undoubtedly the duty of the administrator to make and file an inventory ; and I think the surrogate should have refused to order the sale of the real estate, or to have instituted any proceedings for that purpose, until the administrator had done it. But the omission does not affect the surrogate's jurisdiction to direct a sale, and therefore his acts cannot be attacked on that ground, in this collateral way. They could only have been called in question on appeal to the then court of probates. (§ 32.)

3. The next objection is that no petition or account of property and debts were exhibited to the surrogate, as required by the statute. If this point is true in fact, it is fatal to the defendants. Until such account is presented to the surrogate, he has no power to take the first step towards the sale of the real estate. It is the foundation of all the subsequent proceedings. (§ 23. *Bloom* v. *Burdick*, 1 *Hill*, 135. *Ford* v. *Walsworth*, 15 *Wend*. 450.) The only question therefore is, whether the account was in fact presented. The order to show cause, &c. of the 4th of August, 1824, recites the fact that a regular petition and account were presented. Adam Partenheimer, the administrator, was a witness on the trial, and testified, among other things, that he was sworn by the surrogate ; that he told the surrogate of all the property that Schneider had that he had any knowledge of ; that the surrogate took down in writing what he said ; that he gave the surrogate a statement of Schneider's debts ; that he had a statement of his debts and showed it to the surrogate ; that he stated to the surrogate that Schneider's personal property was not enough to pay his debts ; that he gave the surrogate a statement of all the affairs of Schneider's estate ; that he stated to him that the estate was insolvent, and that its debts could not be paid without selling the real estate in Cayuga county. William H. Seward, another witness

for the defendants, testified that he was present when the letters of administration were granted by the surrogate to Partenheimer, on the 4th of August, 1824. He further testifies, " on the same day and after the appointment of Mr. Partenheimer as administrator, there was an application made by Mr. Partenheimer to the surrogate, representing that Schneider's estate was insufficient for the payment of his debts, giving an account of the estate, and asking the aid of the surrogate in the premises. Mr. Partenheimer exhibited to the surrogate authenticated and correct copies of the administration of the estate of Schneider in Pennsylvania, which showed the application made of his property, set forth an account of his estate, which I believe was a judicial one, and showed that all the personal property of Schneider was insufficient to pay his debts. In addition to that exhibit Mr. Partenheimer was examined on oath before the surrogate, or made a statement or report to him on oath, on the same day the surrogate granted the order for which we had applied. The papers that were prepared were prepared by the surrogate. He took the charge of the business as a proceeding in his court." I think this evidence establishes *prima facie* that an account of the personal estate and debts, &c. substantially conforming to the 23d section of the act, was made and delivered to the surrogate. It was at least sufficient to submit to the jury on that question; and if there was no other difficulty in the defendant's way, a new trial should be awarded.

4. The remaining objection to the proceedings before the surrogate is, that there were no guardians appointed for the plaintiffs, who were all infants; that they therefore never had their day in court, and that their rights could not be affected by any order or decree of the surrogate. The judge at the circuit ruled this point in favor of the plaintiffs, and I think correctly. The same point appears to have been expressly decided in the case of *Bloom* v. *Burdick*, above referred to. The 31st section of the act under which the proceedings were had requires, in express and positive terms, that in all such cases where one or more of the devisees or heirs are infants, the surrogate shall appoint some discreet and substantial freeholder a guardian of

such infant or infants, for the sole purpose of appearing for and taking care of the interests of such infant in the proceedings therein. It sufficiently appears that the plaintiffs in this case were all infants at the time of the proceedings before the surrogate, and there is an entire absence of proof that a guardian was appointed, and no foundation is laid for presuming the appointment of any. It is distinctly in proof that none was appointed, so far as appears from the records and papers in the surrogate's office. So far as this point is involved, it is impossible to distinguish the case from *Bloom* v. *Burdick*, where Bronson, J. in delivering the opinion of the court, shows in a most clear and satisfactory manner, that although the surrogate acquired jurisdiction of the *subject matter*, on the presentation of the petition and account, yet that it was equally necessary that he should acquire jurisdiction over the *persons* to be affected by the sale. That where the heir of the decedent is an infant, he can only appear by guardian to be appointed according to the 31st section of the act which was made for his protection, and that without it the infant has had no day in court, and cannot be deprived of his inheritance.

The reasoning of Justice Bronson in that case is entirely satisfactory to me, and is decisive of the present case.

New trial denied,

